**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| KENARD E. JOHNSON, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. RWT-05-1865 |
| L. WILEY and SGT. WYNE, | : | |
| | : | |
| Defendants. | | |

o0o

**<u>MEMORANDUM OPINION</u>**

This civil rights action, filed on July 11, 2005, alleges violations of Plaintiff's constitutional rights resulting from his arrest and subsequent detention on suspicion of burglary. Pending in this case is Defendants' Motion to Dismiss or for Summary Judgment[1] (Paper No. 5), and Plaintiff's Motion for Continuance (Paper No. 8) and Motion to Strike (Paper No. 9). Defendants have responded to both Plaintiff's motions. (Papers No. 10 and 11). Although Plaintiff seeks additional time to file a Response in Opposition to Defendants Motion for Summary Judgment, he attaches a document entitled "statement of genuine issues of material facts in which there are disputes" to his Motion for Continuance. (Paper No. 8). Upon review of the papers filed in this case, this Court finds it unnecessary to hold a hearing. Local Rule 105.6 (D. Md. 2004).

**Background**

Plaintiff alleges he was falsely accused of committing fourteen crimes without probable cause. (Paper No. 1, at 3). He claims that during an investigation of a series of commercial burglaries in the Bethesda, Maryland area occurring between October 2000 and December 17, 2001, Defendants engaged in police misconduct. (Id.) Plaintiff claims that early descriptions of the suspect

---

[1] Defendants' motion shall be construed as a motion for summary judgment.

involved in the burglaries did not match his physical description. On June 1, 2001, a physical description of Plaintiff was provided to Defendant Wiley by Detective Doug Allen of Fairfax County, Virginia. (Id.) Plaintiff claims that upon receipt of his description, Defendants began a concerted effort to charge and arrest him for the crimes.[2] (Id.) Those efforts resulted in the issuance of a warrant for Plaintiff's arrest on January 15, 2002. (Id.)

The warrant issued for Plaintiff's arrest was lodged as a detainer against him during his confinement in a federal prison. ( Id. at 5–6). Plaintiff asserts that the detainer caused him to be classified at a higher security level. (Id. at 6). Upon release from federal custody on November 7, 2002, he was picked up by Virginia authorities, where the arrest warrant was again lodged as a detainer. (Id.) Plaintiff remained in the custody of Virginia authorities until April 1, 2004. (Id.) He was extradited to Maryland on April 3, 2004, for the arrest warrant issued by the Montgomery County police department. (Id.)

Plaintiff claims he appeared before a State magistrate and presented documents establishing that he was incarcerated in a federal prison on the dates he was alleged to commit the burglaries. (Id.) He alleges the evidence was ignored, bail was set at $25,000, and he remained in custody for five days before he could post bail. (Id.) Thereafter, Plaintiff asserts that he appeared in court for the charges on three separate dates until the entry of nolle prosequi was made, on July 9, 2004, at the request of the State's Attorney. (Id.)

Defendants allege that each of the victims of the burglaries occurring in the Bethesda area

---

[2] Plaintiff asserts that there was no probable cause to believe he was involved in the burglaries because he was incarcerated and/or confined to a substance abuse treatment facility on ten of the dates burglaries were committed.(Id. at 4–5). Plaintiff also asserts that he was falsely accused of committing four other burglaries when he was not confined to a correctional or treatment facility. (Paper No. 1, at 5).

described the suspect as a black male, ranging in height from 5'8" to 6' tall, weighing about 150 pounds. (Paper No. 5, Exh. 2). In addition, the victims identified the suspect as having a prominent skin condition or marking on the back or top of his head. (Id.) The crimes were committed in two office buildings in Bethesda and the DSW Shoe Warehouse and involved larceny of items such as computers, wallets, money, and credit cards. (Id.) After the thefts, someone attempted on several occasions to use the stolen credit cards at the DSW Shoe Warehouse and at a local Giant Food store. (Id.)

While investigating the Bethesda burglaries, Defendant Wiley was in contact with Detective Doug Allen of the Fairfax County Police Department, with whom he had worked previously on other investigations. (Id.) Detective Allen advised Wiley that he had arrested Plaintiff for committing similar crimes in Fairfax County. A photograph of Plaintiff was provided to Wiley. (Id.) Plaintiff is a black male, 35 years old and approximately 5'7" tall, weighing about 150 pounds. (Id.) In addition, Plaintiff had a prominent skin condition atop the back of his head. (Id.) The Fairfax County information bulletin regarding Plaintiff's modus operandi revealed that he targeted office buildings where he could roam the hallways and steal laptop computers that were left in plain view. (Id.)

Videotapes of the suspect in the Bethesda burglaries and of the suspect attempting to use the stolen credit cards were reviewed by Wiley as part of his investigation. (Id.) The suspect in the videotapes bore a resemblance to the picture of Plaintiff provided by the Fairfax County Police Department. (Id.) In addition, a check of Plaintiff's criminal history established that he had been arrested on numerous occasions for burglary, theft and CDS charges. (Id.) Based upon (1) the similar nature and location of the crimes; (2) the information provided by the Fairfax County Police

regarding a similar series of crimes; (3) the similarities between Plaintiff's picture and the suspect depicted in the videotapes; (4) the victims' descriptions of the suspect; (5) the methods by which the crimes were committed; and (6) Plaintiff's prominent skin condition, Detective Wiley determined that he had probable cause to apply for a warrant for Plaintiff's arrest. (Id.) The application for statement of charges was reviewed by a District Court Commissioner who subsequently approved the issuance of an arrest warrant for Plaintiff.

## Motion to Strike and for Continuance

Under Fed. R. Civ. Proc. 12(f), this court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Plaintiff alleges in his Motion to Strike Defendant Wiley's affidavit that Wiley has failed to comply with the requirements of Fed. R. Civ. Proc. 56(e). (Paper No. 9, at 1). Specifically, he asserts that although the affidavit references photographs and videotapes, those materials are not attached to the affidavit, nor were they served along with the affidavit. (Id.) In their Opposition to Plaintiff's Motion to Strike, Defendants point out that the photographs upon which they relied to determine probable cause were attached as exhibits to the Motion for Summary Judgment.[3] (Paper No 10 at p. 5). They further assert that the "additional photographs" received from the Metropolitan Police Department did not form the basis of the probable cause in this case. (Id.) Rather, those photographs were used to confirm the information received from the Fairfax County Police Department as part of the continuing investigation. (Id.) It is clear, however, that the videotapes of the burglaries, as compared to the photographs obtained, were a part of the determination of probable cause in this

---

[3] The photographs filed as exhibits are of no evidentiary value because they are too dark to view the details of the subject in the photograph.

4

case. The videotapes are not, however, necessary in light of the affidavits submitted by Defendants in support of their Motion for Summary Judgment. For reasons more fully set forth below, the undersigned concludes that Defendants have presented enough evidence, without the photographs and videotapes, to be entitled to summary judgment in their favor. The Motion to Strike will be denied.

## Motion for Summary Judgment

### Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. Anderson, 477 U.S. at 250; see also Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987); Morrison v. Nissan Motor Co., 601 F.2d 139, 141 (4th Cir. 1979); Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. See Fed. R. Civ. P. 56(c); Pulliam, 810 F.2d at 1286 (citing Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. See Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A]

complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. See Anderson, 477 U.S. at 256.

In Celotex, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

Celotex, 477 U.S. at 324. However, "'a mere scintilla of evidence is not enough to create a fact issue.'" Barwick v. Celotex Corp., 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting Seago v. North Carolina Theatres, Inc., 42 F.R.D. 627, 632 (E.D.N.C. 1966), aff'd, 388 F.2d 987 (4th Cir. 1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

**Analysis**

Two factors govern the determination of probable cause to arrest in any situation: the suspect's conduct as known to the officer; and the contours of the offense thought to be committed by that conduct. Probable cause to arrest may be lacking in a given case, and an arrestee's Fourth Amendment rights thus violated, either because of an arresting officer's insufficient factual knowledge, or legal misunderstanding, or both. See Brown v. Gilmore, 278 F.3d 362, 368 (4th Cir.

6

2002). "To prove an absence of probable cause, [Plaintiff] must allege a set of facts which made it unjustifiable for a reasonable officer to conclude that [he] was violating the [law]." Id.

When considering whether a defendant is entitled to avail himself of a qualified immunity defense, this Court must consider whether, at the time of the claimed violation, this right was clearly established and "whether a reasonable person in the official's position would have known that his conduct would violate that right." Rish v. Johnson, 131 F.3d 1092, 1095 (4th Cir. 1997) (citation omitted). "In particular, . . . qualified immunity protects law officers from 'bad guesses in gray areas' and it ensures that they may be held personally liable only 'for transgressing bright lines.'" Gomez v. Atkins, 296 F.3d 253, 261 (4th Cir. 2002) quoting Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992).

Plaintiff alleges that the description of the suspect in the burglaries did not fit his description and that he became a suspect only after a picture of him was provided to Defendant Wiley. (Paper No. 1, at 1.) He claims that it was only after he was identified as a potential suspect that the description of the suspect was changed to fit his description. (Id. at 7.) He bases this allegation on the fact that a general description by the victims of the OTG Software burglary described the suspect as 35 to 45 years old, 5'9" to 6'0" tall, weighing 150 pounds with brown eyes, short black hair and a beard. (Id. at 8.) As established in the application for statement of charges, however, the descriptions provided by the victims were not the only evidence relied upon to identify Plaintiff as the suspect involved in the burglaries. Comparisons between videotapes of the suspect committing the robberies and pictures of Plaintiff were also part of the basis for the identification. In addition, other descriptions provided by other victims did match Plaintiff's description. The alleged discrepancy does not negate the strength of the other evidence supporting the identification of

Plaintiff as a suspect, nor is it evidence that his identification was an unjustifiable conclusion.

Plaintiff also alleges that he should not have been considered a suspect because he was incarcerated or committed to a drug rehabilitation program during some of the periods of time when the burglaries were taking place. Relevant to this case is the procedure by which Plaintiff was identified as a suspect. He was not interviewed or questioned by police and, therefore, no information regarding an alibi was presented to the arresting officer for his edification.[4] In short, this is not a case where clear exculpatory evidence was purposefully ignored by Defendants.

Moreover, there is no requirement for a suspect to be provided with an opportunity to clear himself of suspicion. "[R]easonable law officers need not 'resolve every doubt about a suspect's guilt before probable cause is established.'" Gomez v. Atkins, 296 F.3d 253, 262 (4th Cir. 2002), quoting Torchinsky v. Siwinski, 942 F.2d 257, 264 (4th Cir. 1991). To the extent that information regarding Plaintiff's whereabouts during some of the periods of time when burglaries were being committed later came to light, the existence of probable cause at the time the arrest warrant was issued remains unaffected by that subsequent revelation.

Defendants in this case are entitled to avail themselves of a qualified immunity defense. There has been no bright line transgressed by Defendants which casts any doubt on the determination of probable cause or the validity of the arrest warrant.[5]

---

[4] See, e.g., Clipper v. Takoma Park, Maryland, 876 F.2d 17, 18–19 (4th Cir. 1989) (where officer on scene at time of robbery stated he was not sure plaintiff was robber, and police failed to interview alibi witnesses named by plaintiff or to review bank surveillance films of robbery prior to obtaining arrest warrant, plaintiff's verdict for unlawful arrest was sustained).

[5] Indeed, it does not appear that Defendant Wyne had any personal involvement in connection with the investigation or the application for the statement of charges, other than a review of Wiley's supplemental police report.

To the extent that Plaintiff seeks to establish municipal liability against Montgomery County, his claim fails to allege any basis for such liability and must fail. There has been no suggestion that the arrest warrant in this case was issued as a result of an unconstitutional action taken pursuant to a governmental policy or custom. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (local governmental bodies are not liable on respondeat superior basis for torts committed by employees; policy or custom must be established). Plaintiff alleges that Defendants conspired together to frame him as the person who committed the burglaries. Taken as true, the allegation does not state a basis for municipal liability and must be dismissed.

Accordingly, the Motion for Summary Judgment shall be granted by separate order which follows.

  11/14/05    
Date

/s/  
ROGER W. TITUS  
UNITED STATES DISTRICT JUDGE